UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICK COSTOW, | Hon. Joseph H. Rodriguez |
| Plaintiff, | Civil Action No. 15-cv-664 |
| v. | |
| | OPINION |
| LIVE NATION ENTERTAINMENT, INC., d/b/a BB&T PAVILION f/k/a SUSQUEHANNA BANK CENTER; and CITY OF CAMDEN; and CAMDEN REDEVELOPMENT AGENCY; and PARKING AUTHORITY CITY OF CAMDEN; and NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY, | |
| Defendants. | |

This matter is before the Court on several motions for summary judgment. The Court heard oral argument on the motions on February 7, 2017 and the record of that proceeding is incorporated here. For the reasons discussed during oral argument as well as those set forth below, the Court will deny the motions of Defendant Live Nation Entertainment, Inc., d/b/a BB&T Pavilion f/k/a Susquehanna Bank Center [77], Defendant City of Camden Parking Authority [78], Defendant New Jersey Economic Development Authority [98]; will grant the motions of Defendant City of Camden [57] and Camden Redevelopment Agency [76]; and will grant in part and deny in part the motion of Plaintiff Rick Costow [75].

1

Background

Plaintiff Rick Costow is a disabled individual who must use a wheelchair for ambulation and hand controls for driving. He purchased a ticket to attend a concert on August 7, 2013 at the BB&T Pavilion located at 1 Harbor Boulevard, Camden, New Jersey. (Third Am. Compl., ¶ 13.) When Plaintiff arrived at the concert facility, he discovered that the designated parking area and the route to the admission and seating area were not accessible to persons with physical disabilities, and there were dangerous and impassable barriers preventing wheelchair users from accessing and traversing the areas in question. (Id., ¶ 16.)

Plaintiff was unable to use the designated handicap parking spots in the facility's designated parking area (Lot 1) due to the fact that Defendants had placed immovable objects (portable toilets) on the handicap parking spots, blocking them from being used by disabled persons. (Id., ¶ 17.) Plaintiff therefore was directed to park in the lot across the street from the entrance of the concert venue (Lot 2), much farther from the parking area exit. (Id., ¶ 18.) Plaintiff alleges that the path from the parking lot to the concert venue entrance is not wheelchair accessible and includes a slope that is dangerous and a violation of regulations due to its being too steep and without railings. (Id., ¶ 20, 22.) Moreover, there is no curb cut at the end of the slope; the steep slope leads directly to a curb of over four inches

and then onto the street, making it dangerous and impractical for wheelchair users. (Id.) This caused Plaintiff inconvenience, pain, discomfort and distress.

In addition, Plaintiff had significant difficulty entering and exiting the facility and in traveling between the designated parking area and the admission/seating area due to significant barriers to access for disabled persons, including excessively steep inclines and ramps. (Id., ¶ 19, 24.)

According to Plaintiff, the only parking area open to the public that allows for handicap accessible parking at BB&T Pavilion is "Lot 1." (Id., ¶ 35.) However, Plaintiff alleges that Lot 1 is inaccessible and dangerous to disabled persons, is not handicap accessible and violates the codes, laws and regulations of the federal Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, and the New Jersey Law Against Discrimination (LAD), N.J. Stat. Ann. § 10:5-12. (Id., ¶ 36.) Plaintiff seeks damages and injunctive relief, including making the facility, seating areas, parking areas, and routes to and from the facility wheelchair accessible.

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing

3

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's

Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Discussion

Title II of the ADA provides that: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. For claims under this title, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) was excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was based on the disability. Strathie v. Dep't of Transp., 716 F.2d 227, 230 (3d Cir. 1983).[1]

Remedies available to a plaintiff under a Title II claim include injunctive relief, attorneys' fees and compensatory damages. However, to be awarded compensatory damages a plaintiff must show that the alleged

---

[1] Under Section 504 of the Rehabilitation Act claim, a plaintiff must show that: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the denied benefit; (3) he was denied the benefits of a program or activity by sole reason of his disability; and (4) the program or activity receives federal financial assistance. See 29 U.S.C. § 794. The terms "program" or "activity" include the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government. 29 U.S.C.A. § 794. The same standards govern both RA and Title II ADA claims. Chamber v. Sch. Dist. Of Phila. Bd. Of Educ., 587 F.3d 176, 189 (3d Cir. 2009). Accordingly, an analysis under the Rehabilitation Act mirrors the analysis under Title II of the ADA.

discrimination was intentional. D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014). A showing of deliberate indifference satisfies that standard. Id. Deliberate indifference requires both "knowledge that a federally protected right is substantially likely to be violated, and failure to act, despite that knowledge." Id. Although there is no requirement of ill will, deliberate indifference requires "a deliberate choice, rather than negligence or bureaucratic inaction." Id.

Title III of the ADA prohibits disability discrimination in places of public accommodation, and sets forth as a "general rule" that, "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(1).[2] The statute further provides that,

---

[2] Similarly, the NJLAD prohibits discrimination in a place of public accommodation. N.J. Stat. Ann. §10:5–12. "In interpreting the LAD in disability discrimination claims, 'federal law has consistently been considered for guidance.' Borngesser v. Jersey Shore Med. Ctr., 774 A.2d 615 (N.J. Super. Ct. App. Div. 2001) (applying federal law under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701–796, as guidance on a LAD claim) (citing Leshner v. McCollister's Transp. Sys., Inc., 113 F. Supp. 2d 689, 691-92 n.1 (D.N.J.2000); Ensslin v. Twp. of N. Bergen, 646 A.2d 452 (N.J. Super. Ct. App. Div. 1994); see also Chisolm v. McManimon, 275 F.3d 315, 324 n. 9 (3d Cir. 2001) (confining discussion to ADA Title II 'with the understanding that the principles will apply equally to the Rehabilitation Act and NJLAD claims')." Lasky v. Moorestown Twp., 42

inter alia, "a motion picture house, theater, concert hall, stadium, [and] other place of exhibition or entertainment" are "private entities [ ] considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce." 42 U.S.C. § 12181(7)(C). The only remedy available under Title III of the ADA is injunctive relief; monetary damages are not available. 42 U.S.C. § 12188.

Discrimination includes the "failure to remove architectural barriers…that are structural in nature, in existing facilities…where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Places of public accommodation must make alterations to its premises that are "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a)(1). This includes "remov[ing] architectural barriers in existing facilities" which is "readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a)(1). Examples of steps to remove barriers include, "installing ramps," "[m]aking curb cuts in sidewalks and entrances," and "creating designated accessible parking spaces." Id. at § 36.304(b).

---

A.3d 212, 216-17 (N.J. Super. Ct. App. Div. 2012). Accordingly, an analysis under the NJLAD mirrors the analysis under Title III of the ADA.

As an initial matter, the Court finds that Plaintiff has standing to bring the claims asserted in the Third Amended Complaint.

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)). The ADA does not "require a person with a disability to engage in a futile gesture . . .," if the disabled person has "actual notice" of a facility's non-compliance with the ADA. 42 U.S.C. § 12188(a)(1).

The Court finds that Plaintiff has alleged damage as the result of non-compliant parking at BB&T Pavilion that would be redressed by an injunction compelling compliance with the ADA. The Court does not distinguish between Plaintiff's attempted use of Lot 1 versus Lot 2, but finds instead that Plaintiff sought handicapped parking at the facility in general.

Plaintiff has clarified that he is not requesting injunctive relief for Lot 2, and acknowledges that any such request would be dismissed as moot because Lot 2 is no longer utilized as a parking lot, as the Philadelphia 76ers operate a practice facility on what used to be Lot 2. (Voss Dep., p. 20). Regarding Lot 2, then, Plaintiff is left with a claim for damages. Plaintiff did

not sustain bodily injury in this case but seeks damages for emotional distress. However, there is no evidence in the record of intentional discrimination or deliberate indifference on the part of any Defendant. Accordingly, summary judgment must be granted on Plaintiff's prayer for damages. The Court is left with Plaintiff's claim for injunctive relief as to Lot 1 and the interior of BB&T Pavilion.

    Pursuant to a lease agreement with Defendant New Jersey Economic Development Authority, Defendant Live Nation Entertainment, Inc., d/b/a BB&T Pavilion f/k/a Susquehanna Bank Center is responsible for maintaining the Amphitheater and for performing any necessary renovations to the building. (Voss Dep., p. 8; Voss Decl. ¶ 6.) The Third Amended Complaint alleges that "[w]hen plaintiff got inside the facility in question . . . [t]he route he was forced to take to get to his assigned seat was difficult and dangerous, involving an unreasonably long and difficult journey to his assigned seating area, including going on inclines and ramps that were excessively steep." (Third Am. Compl. ¶ 24.)

    In his deposition, Plaintiff testified that there may have been uncovered cables on the ground inside BB&T Pavilion. (Costow Dep. p. 29.) There does not appear to be an actionable architectural barrier here, as there is no allegation that the obstruction persisted beyond a reasonable period of time, or was anything other than a "isolated or temporary

interruption[ ] in . . . access" under 36.211(b). Regarding the lack of rails or curbs on the side of ramps descending down aisles to the seating area, the Court finds that genuine issues of material fact preclude summary judgment as to Live Nation and NJEDA because the parties' experts have submitted conflicting reports as to whether this lack of rails or curbs constitutes non-compliance with the ADA.

    Finally, as to Lot 1, each Defendant argues that it has no responsibility to maintain or repair the lot. However, the Defendants have not sufficiently rebutted Plaintiff's expert report that lists as non-compliant: an insufficient number of handicap parking spaces; there are handicap parking spaces that do not comply with regulations as to width to allow for space for doors to open; there are handicap spaces that lack proper signage; and there is a need for repairs evidenced by cracks, potholes, and a handicap space with a lamp post in it. Plaintiff's expert also cites to non-compliant flangeways for the light rail system at the crosswalks leading from Lot 1 to the Amphitheater. Because the Defendants have produced no evidence to dispute Plaintiff's expert's report, Plaintiff's motion for summary judgment will be granted such that Lot 1 must be brought into compliance with the ADA.

    The record indicates that while Defendant Camden Redevelopment Agency owned Lot 1 at the time of Plaintiff's visit, it has since deeded the

11

property to Defendant City of Camden Parking Authority. (Asseleta Suppl. Decl.) Accordingly, summary judgment will be granted as to CRA but denied as to the Parking Authority which "owns, leases (or leases to), or operates" Lot 1. In additoin, the City of Camden does not own, lease, or operate the property in question, nor did the City own or occupy the property at the time of the incident. Therefore, the City's motion for summary judgment will be granted.

In connection with operating the Amphitheater, Live Nation entered into a license agreement with the Parking Authority regarding Live Nation's use of Lot 1, among other parking lots that are located adjacent to the Amphitheater on the opposite side of Delaware Avenue. (Voss Dep., p. 10; Voss Decl., Ex. A). The Parking Lot License Agreement provides that the Parking Authority "shall be responsible . . . [for] [a]ll ordinary and routine maintenance and repair of [Lot 1] as may be necessary to allow for the continued operation of [Lot 1] as a first-class professionally operated parking facility consistent with industry standards . . . [which includes] sealing of cracks, pothole repair, stripping, patching, fence repair and things of a similar nature." (Voss Decl., Ex. A § (8)(d)(1)). Further, the Parking Lot License Agreement provides that during shows in which Live Nation licenses Lot 1, the Parking Authority "shall cause an individual employee to be present . . . who shall have the authority to make decisions

on behalf of [the Parking Authority] in regard to the operation and function of the Parking Facilities." (Voss Decl., Ex. A § 7(j)).

The Agreement further provides that Live Nation "shall, at its sole cost and expense, be responsible for the management, supervision and operation of the Parking Facilities during Show Hours on each Show Date." (Voss Decl., Ex. A § 7(b)). Live Nation also has the "right and option to enhance or upgrade the Parking Facilities at any time." (Voss Decl., Ex. A § 8(b)). Curtis Voss, the manager of Live Nation, testified that the parties who share in parking revenues from the parking lots that service the concert venue are Live Nation, the Parking Authority, and Standard Parking, a sub-contractor of Live Nation. (Voss Dep., p. 60-61.) The Court finds that Live Nation both leases and operates Lot 1 and as such will be denied summary judgment.

## Conclusion

For these reasons, the Court denies the motions of Defendant Live Nation Entertainment, Inc., d/b/a BB&T Pavilion f/k/a Susquehanna Bank Center [77], Defendant City of Camden Parking Authority [78], Defendant New Jersey Economic Development Authority [98]. It grants the motions of Defendant City of Camden [57] and Camden Redevelopment Agency [76]; and grants in part and denies in part the motion of Plaintiff Rick Costow [75]. An appropriate Order will be filed.

Dated: March 27, 2017                     /s/ Joseph H. Rodriguez
                                         JOSEPH H. RODRIGUEZ, USDJ